FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 04, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

VICKI M. O/B/O MONTE H.,
                    Plaintiff,

        vs.

COMMISSIONER OF SOCIAL
SECURITY,
                    Defendant.

No. 2:17-cv-00437-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 13, 20

        Before the Court are the parties' cross-motions for summary judgment. ECF

Nos. 13, 20. The parties consented to proceed before a magistrate judge. ECF No.

4. The Court, having reviewed the administrative record and the parties' briefing,

is fully informed. For the reasons discussed below, the Court denies Plaintiff's

Motion, ECF No. 13, and grants Defendant's Motion, ECF No. 20.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §
404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing work that he or she has performed in
the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is
capable of performing past relevant work, the Commissioner must find that the
claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of
performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing other work in the national economy.
20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner
must also consider vocational factors such as the claimant's age, education and
past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of
adjusting to other work, the Commissioner must find that the claimant is not
disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to
other work, analysis concludes with a finding that the claimant is disabled and is
therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 1, 2014, Plaintiff[1] filed an application for Title II disability insurance benefits, alleging an amended onset date of January 1, 2010. Tr. 68, 154-57. The application was denied initially, Tr. 100-02, and on reconsideration, Tr. 104-05. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 2, 2016. Tr. 48-76. On November 9, 2016, the ALJ denied Plaintiff's claim. Tr. 29-47.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2010, through his date last insured of December 31, 2014. Tr. 34. At step two, the ALJ found Plaintiff had the following severe impairments: status post above the left knee amputation and obesity. Tr. 35. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the

---

[1] The claimant died on November 28, 2016. ECF No. 13 at 2. This opinion will refer to the claimant as Plaintiff.

ORDER - 6

severity of a listed impairment. Tr. 35. The ALJ then concluded that Plaintiff had

the RFC to perform sedentary work with the following limitations:

> [Plaintiff] is able to lift and/or carry fifteen pounds occasionally and ten
> pounds frequently. He is able to sit for up to six hours in an eight-hour
> workday with normal breaks. He is able to stand and/or walk for two hours
> each in an eight-hour workday with normal breaks. He requires the
> opportunity to change positions every thirty minutes. He is able to walk no
> more than one block without resting. He is never able to crawl, crouch,
> kneel, stoop, or climb ladders, ropes, or scaffolds. He is able to perform
> work limited to occasional climbing of ramps or stairs. He is able to
> perform work that does not include exposure to uneven surfaces or
> unprotected heights. He is able to perform work that does not require
> functional use of the left leg.

Tr. 36.

At step four, the ALJ found Plaintiff was unable to perform any past relevant

work. Tr. 41. At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from a vocational expert, there

were other jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as order clerk, telephone solicitor, or final assembler.

Tr. 41-42. The ALJ concluded Plaintiff was not under a disability, as defined in

the Social Security Act, from January 1, 2010, through December 31, 2014, the

date last insured. Tr. 42.

On November 22, 2017, the Appeals Council denied review, Tr. 1-6, making

the ALJ's decision the Commissioner's final decision for purposes of judicial

review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability income benefits under Title II of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the lay opinion evidence;

3. Whether the ALJ properly incorporated the evidence into the RFC; and

4. Whether the ALJ properly evaluated the vocational expert's testimony at step five.

ECF No. 13 at 4-18.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his subjective symptom claims.  ECF No. 13 at 7-11.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[2]  SSR 16-3p, 2016 WL

_____

[2] At the time of the ALJ's decision in November 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms

ORDER - 8

1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

_____

in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016). The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018, in favor of the more comprehensive SSR 16-3p. Neither party argued any error in this regard.

ORDER - 9

explain why it discounted claimant's symptom claims).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(1)-(3).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 37.

### 1. Lack of Supporting Medical Evidence

The ALJ found the severity of Plaintiff's symptom complaints was not supported by the medical evidence.  Tr. 37-38.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found Plaintiff's allegations of chronic daily pain were not supported by the objective evidence in the record.  Tr. 37-38.  The record contains minimal evidence from the relevant period in this case.  In a July 2010 appointment with his prosthetic fitter, the provider observed that Plaintiff's new socket had a very good seal, that Plaintiff was able to walk in the bars, and that Plaintiff reported that it felt good.  Tr. 351.  In September 2014, a consultative

examiner observed Plaintiff appeared somewhat uncomfortable but seemed to move fairly fluidly between the chair and exam table and found Plaintiff had normal muscle bulk and tone, full motor strength, some difficulty with forward bending, inability to walk forward on toes, backwards on heels, squat, or rise due to amputation/prosthetic left leg, and minimal decreased range of motion in the right knee only. Tr. 353-56. Plaintiff received 10 chiropractic treatments over the course of four years during the period between his onset date and his date last insured. Tr. 358-59. In April 2016,[3] Plaintiff complained of severe back pain after lifting weights two days earlier. Tr. 357. Plaintiff's chiropractor noted a positive straight leg test on the left side, performed an adjustment, and recommended follow-up treatment on an as needed basis. *Id.* The ALJ reasonably concluded that these minimal findings did not corroborate the severe disabling pain symptoms Plaintiff alleged.

    *2. Daily Activities*

    The ALJ found Plaintiff's daily activities were inconsistent with the level of impairment he alleged. Tr. 34-35, 37-38. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of

_____

[3] The ALJ incorrectly described this treatment note as being from April 2014, prior to Plaintiff's date last insured. Tr. 37-38.

ORDER - 12

activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Here, the ALJ noted that Plaintiff alleged that he was unable to sit for prolonged periods, that he could not walk for more than two hours total in a day, and that chronic daily pain caused him to lie down four to five times per day for twenty minutes at a time at unpredictable intervals. Tr. 36-37; *see* Tr. 59-61. The ALJ then summarized Plaintiff's robust daily activities, including caring for four children, preparing three meals a day for up to an hour at a time without needing to take breaks or sit down, performing light housework, picking up his children from school, grocery shopping for one hour on a regular weekly basis, and attending weekly barbeque dinners with friends. Tr. 35-38; *see* Tr. 61-63, 206-09. The ALJ

also noted that Plaintiff reported purchasing several condominiums and receiving rental income from them, but that Plaintiff's tax documents did not reflect Plaintiff having employees and Plaintiff did not testify that he received help managing the condominiums. Tr. 34; *see* Tr. 64, 169-93. The ALJ reasonably inferred that Plaintiff managed these condominiums alone, which the ALJ found to be another activity inconsistent with complete disability. Tr. 34-35. The ALJ's finding that the sum of Plaintiff's daily activities was inconsistent with Plaintiff's specific alleged limitations is supported by substantial evidence.

### 3. Inconsistent Symptom Reporting

The ALJ found that Plaintiff's symptom testimony was undermined by his inconsistent reporting in the record. Tr. 38-39. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas*, 278 F.3d at 958-59. Additionally, "[t]he failure to report symptoms to treatment providers is a legitimate consideration in determining the credibility of those complaints." *Lesher v. Comm'r of Soc. Sec.*, No. 2:15-cv-00237-SMJ, 2018 WL 314819, at *4 (E.D. Wash. Jan. 5, 2018) (citing *Greger v. Barnhart*, 464 F.3d 972, 972 (9th Cir. 2006)). Here, the ALJ noted that Plaintiff's statement in his function report that he wakes

ORDER - 14

up several times per night due to nerve pain was inconsistent with Plaintiff's report to Dr. Currigan that he sleeps for six to eight hours per night without problems. Tr. 38; *compare* Tr. 206 *with* Tr. 352. The ALJ also noted that despite Plaintiff's hearing testimony that his pain was so severe that it caused him to lay down four to five times per day, the record contains no documentation of Plaintiff ever reporting this limitation to a medical provider, including the consultative examiner. Tr. 38; *see* Tr. 61. The ALJ reasonably concluded that Plaintiff's inconsistent symptom reporting undermined the credibility of these reports.

Plaintiff argues that Plaintiff's statements were not inconsistent, identifying Plaintiff's endorsement of insomnia during the review of symptoms during the consultative examination. ECF No. 13 at 9; *see* Tr. 353. Plaintiff's endorsement of insomnia occurred during the same examination where Plaintiff reported sleeping six to eight hours per night without issue. Tr. 352. Even where the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). The ALJ reasonably concluded that Plaintiff's symptom reporting was inconsistent. This finding is supported by substantial evidence.

*4. Minimal Treatment*

The ALJ found Plaintiff's symptom allegations were inconsistent with the minimal treatment he received. Tr. 37-38. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn*, 495 F.3d at 638. Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, 49 (9th Cir. 2009) (unpublished) (considering why plaintiff was not seeking treatment). Here, the ALJ noted that the record reflected "very little treatment" for Plaintiff's symptoms. Tr. 37. The record from the five-year period between Plaintiff's onset date and date last insured reflects only ten chiropractic appointments, three interactions with Plaintiff's prosthetic fitter, and the consultative examination. Tr. 341-61.

Plaintiff argues that he had "good reason" for not seeking further treatment. ECF No. 13 at 8-9; *see Smolen*, 80 F.3d at 1284 (ALJ may discredit a claimant's symptom complaints if the clamant fails to show good reason for failing to follow treatment recommendations). Plaintiff testified that he does not take pain medication because he does not want to become addicted and because it did not "solve [his] issues." Tr. 62-63. Plaintiff further testified that he "[doesn't] go to a

doctor" because "they just want to give you pain pills."  Tr. 65.  Declining to take

prescription narcotics for fear of addiction can be a good reason to fail to follow a

treatment recommendation.  *See Trevizo v. Berryhill*, 871 F.3d 664, 680 n.8 (9th

Cir. 2017).  However, this does not provide "good reason" for Plaintiff's failure to

seek medical treatment in general.  The record does not contain any medical

evidence to support Plaintiff's assertion that the only medical treatment available

to him was prescription painkillers.  Additionally, the record does not reflect

Plaintiff seeking alternative treatments from medical providers.  At most, Plaintiff

received occasional chiropractic adjustments.  Tr. 358-61.  Plaintiff bears the

burden of proof at steps one through four of the sequential evaluation.  *Tackett*,

180 F.3d at 1098.  The ALJ reasonably concluded that Plaintiff's lack of medical

treatment during the relevant period was inconsistent with his allegations of totally

disabling pain.  Tr. 37.

In sum, the ALJ provided clear and convincing reasons supported by

substantial evidence in the record for discrediting Plaintiff's symptom complaints.

**B. Lay Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of lay opinion evidence from

Plaintiff's friends Alan Herdon, Lloyd Herdon, and Tonya Keller.  ECF No. 13 at

12-16.  An ALJ must consider the statement of lay witnesses in determining

whether a claimant is disabled.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

1053 (9th Cir. 2006). Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. § 404.1513; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Alan Herdon submitted a statement that he had known Plaintiff for over 17 years, that Plaintiff was an active person before the loss of his leg, that Plaintiff was able to work around his property and engage in outdoors activities with his children before the loss of his leg, that since the loss of his leg Plaintiff needed help standing and engaging in activities that require walking or standing, that Plaintiff was often in pain even when sitting, that Plaintiff had fallen in front of Mr. Herdon and needed help on uneven ground, that Plaintiff had open sores and swelling on his leg, that Plaintiff's energy levels were low, and that Plaintiff seemed depressed and anxious. Tr. 253-54.

Lloyd Herdon submitted a statement that he had known Plaintiff for 16-17 years, that Plaintiff was a self-sufficient person prior to losing his leg, that since

the loss of his leg Plaintiff became "100% dependent" on others, that Plaintiff needed to stop frequently and rest when riding in cars, that Plaintiff could no longer walk to fish and had to fish sitting in a boat or on a dock, that Plaintiff could no longer walk miles in the woods to hunt, that Plaintiff could no longer snowmobile, that Plaintiff could engage in prior activities only by sitting, that Plaintiff had low motivation and seemed depressed, and that Mr. Herdon had observed sores on Plaintiff's leg. Tr. 256-59.

Tonya Keller submitted a statement that she had known Plaintiff since junior high school, that Plaintiff had always been active in sports and outdoor activities, that Plaintiff's injury has caused him to become a bystander due to his inability to participate in activities, that Plaintiff's injury caused him to be unable to do many daily chores and outdoor activities, that Plaintiff complained to Ms. Keller on many occasions about his pain, that Plaintiff had to take medications and visit doctors frequently, and that Plaintiff had to depend on the help of others. Tr. 261-62.

The ALJ considered all three lay opinions and assigned them little weight. Tr. 41.

First, the ALJ gave less weight to the lay opinion evidence because the ALJ identified inconsistencies in the lay evidence. Tr. 41. Inconsistency with other evidence in the record is a germane reason to discredit lay witness evidence. *Lewis*

ORDER - 19

1  *v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ noted that Mr. A. Herdon's

2  report that Plaintiff "just wants to sit or lay down just to relieve the pain" was

3  inconsistent with Plaintiff's testimony that sitting caused him pain.[4] Tr. 41;

4  *compare* Tr. 254 *with* Tr. 59. The ALJ also noted that Mr. L. Herdon's report that

5  Plaintiff was able to hunt and fish while sitting was inconsistent with Ms. Keller's

6  report that Plaintiff was unable to engage in outdoor activities. Tr. 41; *compare* Tr.

7  256-57 *with* Tr. 261. Finally, the ALJ observed that Ms. Keller's report that

8  Plaintiff frequently visited doctors was inconsistent with the complete lack of

9  medical records of doctor's visits during the relevant period. Tr. 41; *see* Tr. 261.

10  These inconsistencies provide germane reason to discredit the lay witnesses'

11  opinions.

12

13  _____

14  [4] Plaintiff challenges the ALJ's finding by identifying another portion of Mr.

15  Herdon's statement that is consistent with Plaintiff's testimony but inconsistent

16  with the portion of Mr. Herdon's statement identified by the ALJ. ECF No. 13 at

17  14. Even where the "evidence is susceptible to more than one rational

18  interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198

19  (internal quotation marks omitted). The evidence Plaintiff identifies does not

20  undermine the ALJ's reasonable interpretation of the record.

ORDER - 20

Second, the ALJ gave less weight to the lay opinion evidence because it was not clear how much time each witness spent with the Plaintiff. The opinion of a lay witness who views the claimant on a less-than-daily basis still carries weight. *Dodrill*, 12 F.3d at 919. However, the frequency with which a lay witness observes the claimant is a relevant consideration in how much weigh to assign to a lay opinion. 20 C.F.R. § 404.1527(c)(2), (f)(1). The ALJ noted that although all three of the lay witnesses indicated they had known Plaintiff for a substantial period, none of the lay witness statements indicated how frequently they observed Plaintiff's functioning.[5] Tr. 40-41. The ALJ reasonably considered this factor in light of the inconsistencies the ALJ observed in their testimony discussed *supra*. This was a germane reason to discredit the lay opinion evidence. The ALJ's evaluation of the lay opinion evidence is supported by substantial evidence.

---

[5] Contrary to Plaintiff's argument, ECF No. 13 at 14, the omission of this information did not trigger the ALJ's duty to develop the record. The duty to develop the record is triggered if the evidence is ambiguous or the record is inadequate to make a decision. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). A lay witness' failure to indicate how frequently they observe a claimant does not render the record as a whole ambiguous or inadequate to determine disability.

ORDER - 21

**C. RFC Formulation**

Plaintiff asserts the ALJ erred in failing to incorporate evidence of Plaintiff's functional limitations into the RFC. ECF No. 13 at 4-7.

The RFC reflects the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).

First, Plaintiff asserts the ALJ should have incorporated limitations for lack of focus and absenteeism into the RFC based on Dr. Thompson's hearing testimony. ECF No. 13 at 5-7. The ALJ gave Dr. Thompson's opinion great weight. Tr. 39. However, an ALJ does not need to incorporate into the RFC an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan,* 169 F.3d at 601. Here, Plaintiff identifies the following exchange from the hearing as evidence of a functional limitation:

ALJ: From your experience people who have to wear a prosthetic, is that, is that something that would impact maybe his ability to focus on work or would he miss days, what, what's your experience with that?

Dr. Thompson: Yeah. I think it would. The, the issues of wearing a prosthesis are more complex and more frequent in, in the above the knee area than they are in the more common below knee amputations which tend to be better well tolerated and can be worn more reliably.

Tr. 56.

Dr. Thompson did not render a specific opinion as to how Plaintiff's prosthesis would impact Plaintiff's focus or attendance at work. Dr. Thompson did not opine that Plaintiff would miss any particular number of hours or days at work due to the prosthesis, nor did Dr. Thompson give an opinion as to what impact a prosthesis would have on this Plaintiff's focus. To the contrary, Dr. Thompson testified that certain problems with prostheses could be resolved by taking the prosthesis off. Tr. 56. Dr. Thompson further testified that Plaintiff's specific limitations could be resolved by removing the prosthesis. Tr. 58. The ALJ reasonably incorporated Dr. Thompson's opinions into the RFC by developing an RFC that reflects Plaintiff's functioning while his prosthesis was removed. Tr. 36-41. Additionally, Dr. Thompson's opinion that Plaintiff could improve his functioning by removing the prosthesis is consistent with Plaintiff's own testimony that he often removed his prosthesis for comfort. Tr. 55. The ALJ did not err in incorporating Dr. Thompson's opinion into the RFC.

ORDER - 23

Plaintiff also asserts the ALJ should have incorporated the vocational expert's testimony about distraction and absenteeism into the RFC. ECF No. 13 at 6-7. Plaintiff quotes the vocational expert's testimony about the vocational impacts of prostheses generally as evidence of limitations that the ALJ should have incorporated into the RFC. *Id.* However, the testimony identified by Plaintiff is a statement of the vocational expert's general observation and experience and does not pertain to Plaintiff's specific functioning. Tr. 71-72. Therefore, it was not required to be incorporated into the RFC. *See* 20 C.F.R. § 404.1545(a)(4) ("When we assess your residual functional capacity, we will consider *your* ability to meet the physical, mental, sensory, and other requirements of work") (emphasis added). The ALJ did not err in formulating the RFC.

**D. Step Five**

Plaintiff challenges the ALJ's evaluation of the vocational expert's testimony at step five. ECF No. 13 at 16-18.

First, Plaintiff asserts the ALJ failed to ask the vocational expert if his testimony was consistent with the Dictionary of Occupational Titles (DOT), as required by SSR 00-4p. ECF No. 13 at 16-17; SSR 00-4p, 2000 WL 1898704. However, Plaintiff's reply brief concedes that the ALJ did in fact satisfy this duty by instructing the vocational expert to state whether his testimony deviated from the DOT. ECF No. 21 at 4; *see* Tr. 70. The ALJ did not err in this regard.

Second, Plaintiff asserts the ALJ failed to resolve a conflict between the vocational expert's testimony and the DOT. ECF No. 13 at 16-18. Specifically, Plaintiff claims that Plaintiff's limitation to modified sedentary work is inconsistent with the RFC limitation that Plaintiff "requires the opportunity to change positions every thirty minutes." *Id.*; Tr. 36.

"In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate between periods of sitting and standing." SSR 83-12, 1983 WL 31253, at *4. "In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base." *Id.* Additionally, "[w]hen there is an apparent unresolved conflict between [vocational expert] or [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence." SSR 00-4p, 2000 WL 1898704, at *2. However, where the DOT is "silent on whether the jobs in question allow for a sit/stand option," there is no conflict with a vocational expert's testimony that a claimant can perform a job with a sit/stand option. *Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016) (unpublished); *see also Meyer v. Astrue*, No. CV 12-89-M-DLC-JCL, 2013 WL 1615893, at *7-*8 (D. Mont. Feb. 22, 2013) (SSR 00-4p

satisfied where DOT did not address sit/stand option and ALJ consulted vocational expert about limitation of claimant's ability to sit or stand pursuant to SSR 83-12).

Here, the RFC included a limitation that Plaintiff would be required to change positions every thirty minutes. Tr. 36. The ALJ consulted the vocational expert, who testified that an individual with Plaintiff's RFC would be capable of performing the jobs of order clerk, telephone solicitor, or final assembler. Tr. 70-73. The DOT is silent as to whether the three jobs identified by the vocational expert allow for a sit/stand option. DOT 209.567-014, *Order Clerk*, 1991 WL 671794; DOT 299.357-014, *Telephone Solicitor*, 1991 WL 672624; DOT 713.687-018, *Final Assembler*, 1991 WL 679271. Therefore, there was no conflict for the ALJ to resolve. The ALJ satisfied SSR 83-12 by seeking the testimony of a vocational expert. 1983 WL 31253, at *4. The ALJ did not err in considering the vocational expert's testimony at step five.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 20, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED February 4, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE